UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHNNY D. BUTTS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 16-1135 |
| JOSEPH SMILES III, Individually, | ) |
| Defendant. | ) |

## ORDER AND OPINION

Now before the Court is Defendant Smiles' Motion for Summary Judgment (Doc. 39). For the reasons set forth below, Defendant's Motion (Doc. 39) is DENIED.

### BACKGROUND

On December 4, 2015, Johnny Butts broke a glass windowpane in the course of burgling his friend's residence and stealing a firearm. In doing so, Butts sustained large lacerations to both forearms. He sought treatment at Methodist Hospital in Peoria. While he was being treated at the hospital, Butts told nursing staff conflicting stories as to how he sustained the injuries, leading the staff to notify the Peoria Police Department of their concerns. Officer Joseph Smiles arrived to investigate while Butts was being treated, and took photographs of Butts' wounds before they were sutured. After Butts' initial story did not check out, Officer Smiles returned to the hospital and spoke with the nursing staff about Butts' conflicting stories. He was then dispatched to a residence at 400 W. Armstrong to investigate a report of residential burglary. At the residence Smiles observed a broken window and blood, and the complainant informed Smiles that Butts had been living with him occasionally and a gun was missing from the residence.

While Smiles was investigating, Butts received morphine and over 80 sutures. When his treatment was completed, hospital staff discharged him into the custody of Smiles, who placed

1

him under arrest for filing a false police report and residential burglary. Butts said as he was exiting his hospital room, Smiles grabbed him, pushed him up against a wall, and handcuffed Butts with his arms behind his back. Officer Smiles then walked Butts to a police vehicle so that he could be transported to the Peoria Police Department for booking. According to Butts, Smiles held onto the handcuffs while he escorted Butts out of the Hospital and pushed his arms upward despite Butts' protestations of pain. Smiles provided an affidavit in support of his motion for summary judgment, but his affidavit does not address the details of the arrest. Doc. 39-3.

## **LEGAL STANDARD**

Summary judgment is appropriate where the movant shows, through "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials" that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In resolving a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In order to withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). If the evidence, however, is "merely colorable, or is not significantly probative or merely raises 'some metaphysical doubt as the material facts,' summary judgment may be

2

granted." *Liberty Lobby*, 477 U.S. at 249–50. Thus, in order to overcome the undisputed facts set forth in a defendant's motion for summary judgment, a plaintiff cannot rest on the allegations in his complaint but must point to affidavits, depositions or other evidence of an admissible sort that a genuine dispute of material fact exists between the parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

## DISCUSSION

As an initial matter, Defendant's reply brief points out that Plaintiff's response to the motion for summary judgment failed to comply with the federal and local rules regarding responses to motions for summary judgment because Butts did not respond to each numbered factual statement in Defendant's motion. Doc. 48. Indeed, Butts' response fails to state whether any of Defendant's numbered factual statements are in dispute and whether those statements are material. See Local Rule 7.1 (D)(2)(b). Therefore, the statements of fact in Defendant's motion are deemed admitted. *Id*. at 7.1 (D)(2)(b)(6). However, as discussed below, even if all of Defendant's statements of fact are admitted, a dispute of fact remains as to whether Officer Smiles used excessive force in arresting Butts. Accordingly, summary judgment on the present record is inappropriate.

*(1) Whether Officer Smiles Used Excessive Force*

Claims that law enforcement officials used excessive force in the course of making an arrest "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 388 (1989). The reasonableness of an officer's actions is evaluated under the totality of the circumstances. *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003). Accordingly, "[t]he nature and extent of the force that may be used depends upon the circumstances surrounding an arrest, including 'the severity of the crime at issue,

whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' " *Howell v. Smith*, 853 F.3d 892, 898 (7th Cir. 2017) (quoting *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009)). In evaluating these circumstances, courts must view the officer's conduct through "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. (quoting *Graham*, 490 U.S. at 396–97).

At the time Officer Smiles arrested Butts, he had probable cause to believe that he committed the offense of residential burglary, and may have also absconded with a firearm. Thus, the Court agrees with Defendant that the severity of Butts' crime was one factor weighing in favor of the use of force. See *People v. Bales*, 108 Ill. 2d 182, 196, 483 N.E.2d 517, 523 (1985) (finding residential burglary to be as serious of an offense as aggravated kidnapping or indecent liberties with a child).

Butts certainly committed a serious crime, but that consideration must be viewed in the together with the remaining circumstances surrounding his arrest. Butts' version of the facts are fairly summarized by the following excerpt of his deposition testimony:

> Q. And what exactly did he do that made you believe he committed excessive force against you?
>
> A. Well right after I had surgery on my arms, as soon as I left out of the room to go into the hallway, I thought I was leaving, I did not know that I was being arrested, so as soon as I got into the hallway somebody just came up and grabbed me, which was Officer Smiles, and he pulled my arms behind my back and he just roughly pushed me up against the wall and handcuffed me and I asked him like what did I do, you know, and he was like you know what you did. He didn't explain to me nothing about what was going on. So as we was going out of the hospital he was holding me by the handcuffs and he was just holding my arms up and just pushing me forward out of the hospital. And I just had surgery[1] so this was really painful to me, you know, so he wasn't answering

---

[1] Butts repeatedly refers to the suture procedure as "tendon repair surgery." The medical records submitted by both Parties belie that assertion. However, it is evident that Butts received significant medical care—80 sutures—for a

4

> any of my questions, I was telling him he was hurting me, he just ignored me, so on the way to the police car I just stopped talking to him, you know, I realized I wasn't getting through to him so I just didn't say anything else. I let him do what he did and I just went on to the police station, in the police station they put me in a room and I wasn't able to speak to him because I had like three or four shots of morphine.

Doc. 39-4, at 7–8. First, viewing the facts in the light most favorable to Butts, the Court cannot say that he posed "an immediate threat to the safety of the officers or others" at the time of his arrest. *Howell*, 853 F.3d at 898. To the contrary, he had just been given a dose of morphine that was apparently sufficient to incapacitate him when law enforcement later attempted to interview him at the police station. Additionally, Butts had just received 80 sutures in his arms. And while Officer Smiles rightfully believed that Butts may have stolen a gun, it strains credulity to believe that this was not a concern addressed by hospital staff or Officer Smiles well before Butts was discharged. Further, Defendant does not allege that Butts made any attempt to resist arrest or to evade arrest by flight. See *Howell*, 853 F.3d at 898. Rather, the record evidence indicates that Butts was docile and compliant throughout the hospital visit and ensuing arrest. In other words, the remaining factors favor Butts.

"[A]n officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (quoting *Herzog v. Vill. of Winnetka, Ill.*, 309 F.3d 1041, 1043 (7th Cir. 2002)). "[W]hether an officer knows that a given action unnecessarily will harm a particular individual will depend upon the circumstances of the arrest." *Id*. In *Stainback*, the Seventh Circuit observed that,

> [i]n some cases, the fact that an act will cause pain or injury will be clear from the nature of the act itself. *See, e.g., Payne v. Pauley,* 337 F.3d 767, 779 (7th Cir. 2003) (concluding that it was not objectively reasonable for the officer to twist the

---

serious injury. Thus, while the distinction may be relevant to damages, it is immaterial to the issue of whether Officer Smiles used excessive force in arresting Butts.

5

> plaintiff's arm, force her arms behind her back and over-tighten her handcuffs to the point of causing numbness and significant injury when the plaintiff had not threatened harm to anyone, was not resisting arrest and was charged with a minor offense). In other cases, it may become clear to an arresting officer that, although a particular action would not ordinarily harm an arrestee, the action would nevertheless cause pain or injury to the particular individual being placed under arrest. For example, an officer's otherwise reasonable conduct may be objectively unreasonable when the officer knows of an arrestee's medical problems.

*Stainback*, 569 F.3d at 772.

According to Butts' own testimony, he only told Officer Smiles "you're hurting me" or complained of nonspecific pain. Butts did not ask to have his hands cuffed in front of his body or otherwise elaborate on his condition. Admittedly, "a reasonable officer cannot be expected to accommodate an injury that is not apparent or that otherwise has not been made known to him." *Stainback*, 569 F.3d at 773 (citing *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (plaintiff could not prevail on excessive force claim where he complained about tight handcuffs but did not indicate severity of pain); *Howell v. Smith*, 853 F.3d 892, 900 (7th Cir. 2017) (plaintiff could not prevail on excessive force claim against officer who handcuffed him where he "at most" complained that he recently had surgery that limited mobility of his arm).

However, unlike *Stainback*, *Tibbs*, and *Howell*, in the instant case Officer Smiles took photographs of Butts' lacerated arms before his wounds were sutured, so he was fully aware of the extent of Butts' injuries when he arrested and handcuffed him behind his back. See Doc. 47-1, at 35–36. In other words, what would have been otherwise reasonable conduct—placing an individual in handcuffs with their arms behind their back following an arrest—became less reasonable when Officer Smiles knew that Butts had just received significant medical treatment for multiple lacerations on his forearms. And as Butts points out, the Peoria Police Department's procedures specifically except arrestees with "associated medical problems" from the requirement that all arrestees be cuffed behind their backs. See Doc. 47-1, at 16. Significantly,

6

nowhere in the record is an explanation from Officer Smiles as to why Butts was not handcuffed with his arms in front of, rather than behind, his back. Nor does Defendant assert that Officer Smiles ever considered Butts' injuries during the arrest. Cf. *Stainback*, 569 F.3d at 773 (officers have a duty to consider preexisting injury, together with other circumstances, when determining appropriateness of handcuffing an individual). In sum, a reasonable jury could find that Officer Smiles used excessive force under the circumstances when he handcuffed Butts behind his back.

*(2) Qualified Immunity*

Even if Officer Smiles used excessive force when handcuffing Butts, he may nevertheless be entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). In order for a right to be clearly established, it must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right; i.e., when existing precedent places "the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

As stated above, the Seventh Circuit has repeatedly held that "an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Stainback*, 569 F.3d at 772 (citing *Herzog*, 309 F.3d at 1043). Here, Butts alleges that Officer Smiles acted unreasonably when Smiles handcuffed him behind his back and jerked his arms knowing he had just received 80 stiches. If the facts alleged by Butts are credited by the jury, it should have been clear to Officer Smiles or any reasonable officer that it would be unlawful to use the amount of force he did to arrest Butts. *Payne v. Pauley*, 337 F.3d 767, 780 (7th Cir. 2003). Accordingly, based on the

7

record before the Court, Defendant is not entitled to summary judgment on the grounds of qualified immunity.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. 39) is DENIED.

Signed on this 27th day of March, 2018.

<u>s/ James E. Shadid</u>
James E. Shadid
Chief United States District Judge